The total of six cases today, three of them are being submitted without oral argument, just on the briefs. They are appeal number 05-3187, Taylor v. Department of Veterans Administration, appeal number 05-3372, Matthews v. the Office of Personnel Management and appeal number 05-7197, Lopez v. Department of Veterans Affairs. Of the three cases on the oral argument calendar, the first is appeal number 05-1250, Hovanec v. United States Postal Service. Mr. Kopko, good morning. Welcome. Please proceed. May it please the Court, Counsel. Good morning, Your Honor. My name is Ed Kopko, an attorney representing Mr. Hovanec in this appeal. Counsel, the facts of this case warrant the Court extending the decision of the Ambrose case, which was authored by Your Honor, Chief Judge Michel, in 2002. The facts of this case, Your Honor, present much more than sloppy contract administration, as was noted by the Board. What we have here... Counsel, was there any provision of the lease? We apparently only have one page of it in the appendix. But was there any provision of the lease by which Mr. Hovanec, and thank you for the correction on pronunciation of his name, had a right to be notified about any concern of excessive rental rates in the year or two period leading up to the expiration of the original 10-year lease term? No, sir, not in the contract per se, but in the Postal Service Guidelines, there are specific provisions that pertain to that. Well, say what with respect to the lessor being consulted a year or two before the end of the period? There are actually several provisions that pertain to the question that the Court is posing to me. There is a provision under the Postal Service Guidelines for the Postal Service to do a market survey. I understand that, but I'm trying to differentiate between what various employees of the service are supposed to do, on the one hand, which I don't consider of much interest, and what Mr. Hovanec had a right to expect in the circumstance where the Postal Service, a year or two prior to the end of the period, developed a concern about possibly excessive rent. Does he have a right to be warned? Yes, my argument is that yes, he does have the right to be warned. I understand what your argument is, but what I'm trying to figure out is what language in what part of the manual, in effect, gives him a right to be warned that they have a rental rate concern in the period where they're deciding whether to renew the lease versus make alternate arrangements. Although I can't invite your Court, your Honor's attention to the specific provision, there is a provision that I rely upon that requires the Postal Service to monitor all contracts that contain an option purchase provision. Granted, granted, they should monitor it for Postal Service purposes, but where is there anything that says he has a right to be told that they have a concern that the rent is too high, and that that concern is going to impel them to make alternative arrangements? There is no specific provision. Isn't that a problem for your case? No, sir, it's not a problem, because when you apply the doctrine of good faith and fair dealing, and also the doctrine of bad faith to this case, I say that the Postal Service has an obligation in the performance of good faith and fair dealing to follow its own regulations. And in that regard, your Honor, there are many provisions that a reasonable reading of that one could infer that Mr. Hobanek is entitled to be contacted by these things. I just invite... Well, that's what I'm struggling with. If there's some text, even if it isn't a binding rule that articulates a right to be warned, I'm calling it, about a rental rate concern, then maybe there's a foundation for your argument. But in the absence of some specific text, non-binding or binding, why isn't Mr. Hobanek in the place of any other lessor where the lessee has the right to renew or not renew, as of the expiration date, for any reason, good or bad? Let me be so bold to suggest to your Honor that it's the way the court is phrasing the question that is troublesome. It's not that he has a right to be warned about this. Because there is no right to be warned about that. But if the court would entertain my position on this, that rather than looking at it as a right to be warned, why can't Mr. Hobanek expect that governmental officials are going to follow their own guidelines? When you look to those guidelines, there is nothing about this right to be warned business. But what there is- What you have, Mr. Kupko, is an express contract that very clearly says this is a ten-year lease. Yes, sir. No question about that. And that any right to extension is at the discretion of postal service. Not unfettered discretion, Judge Mayer. Not unfettered discretion whatsoever. Because- I see. I've got the wrong- Judge Lorry, please continue. Oh, I beg your pardon. What I'm reading is- You're reading accurately. I beg your pardon, Judge Lorry. Not knowing your Honor personally- That's fine. I'm happy to be confused with you. Back to the point that I was addressing, your Honor. There is no- This is a ten-year express contract. There's no doubt about that stuff. But what we have here, and what I'm urging the Court to consider is, in addition to that, when you have a contract with the purchase option, the post office own guideline imposes certain responsibilities upon the post office. One of it is to monitor the lease. Number two is that they had an obligation to contact Mr. Hovannik to see whether he would be willing to sell it. None of those things happened here. What you have instead is a multi-year pattern of evasion and subversion of their own guidelines. And if they had followed those, Mr. Hovannik would have gotten the benefits of the contract that he believed that he was getting in the very early term of this stuff. Now, it's a ten-year contract. There's no question about that. But if they had followed the guidelines, Mr. Hovannik would have been willing to negotiate with him. Mr. Hovannik would have been willing to sell his property to him. Why isn't it, counsel, harmless error that the guidelines weren't followed even assuming they require what you say they require? Mr. Hovannik knew when the lease was expiring at the end of the ten years. He presumably knew that real estate values in the town in question had fallen. He knew for sure that the lease has an even higher annual rental rate for the first option period than for the initial ten years. And therefore, why couldn't he, knowing those things, have been on notice inside of his own brain that he better initiate some negotiation or he's likely to face a non-renewal? He did that, Your Honor. The record clearly indicates that he contacted USPS. No one returned his telephone call. It's part of this pattern of subversion that I'm explaining to the court. He made one call, as I recall the affidavit, which was not returned, again, according to the affidavit. But as I understand the record, he did not initiate any correspondence or make any further calls or set up a meeting or go see anybody or take any other sort of affirmative step to protect his own chances of having the renewal period option exercise. The answer to that, Your Honor, is that he was under the expectation from the prior conversations that he had that, in fact, it would be renewed. And if USPS had followed their own guidelines, it would have been renewed. Because the market survey was not done. If they had done the market survey, that would have triggered another obligation for them to contact Mr. Hovannik directly. One point I urge the court to consider here, no one from USPS ever directly spoke with Mr. Hovannik through any of this process. They, in fact... I notice that it's a little bit peculiar for a government official to call the spouse of a lessor and then act as if the conversation with the spouse somehow is the same as the conversation with the lessor. As I understand it, the property and the building built on it are owned by Mr. Hovannik as a sole proprietor, local contractor, which would lead me to suspect that Mrs. Hovannik has no ownership interest in this at all. So you're entirely right. She had no proprietary interest in this. Therefore, no matter what she said, it would not bind her spouse as the actual landowner. And more importantly, Your Honor, on all of the documents with USPS, it's only Mr. Hovannik. He is the lessor. He not only owns the property, but he too is the lessor. What you have are assertions of bad conduct, administration, but do they overcome a clear contractual provision? That's my point, Judge. When urging this Court to extend the am pro decision here, my contention is that the Board made all of the right findings of fact and all of the wrong conclusions of law. That in fact, when you look at the totality of the circumstances here, when you look at this multi-year pattern of evading their own guidelines, when you look at what is really very egregious behavior, it is much more than sloppy contract administration. It rises to the level of a breach of the covenant of good faith and fair dealing, and it implicates the am pro bad faith standard. Thank you so much. All right. Thank you, Mr. Capito. And just as a matter of curiosity, you live in Ithaca, New York. Yes, sir. I live in Ithaca, New York. Did you also attend college or university? Oh, no, sir. I live in Ithaca because my wife tells me I live there. She teaches at Cornell University, and we had a long conversation about who was going to commute. And I lost. Very well. Thank you, sir. Ms. Hogue. Welcome to the Court. Good morning, Your Honor. May it please the Court. Before you begin, would you reassure me that in this fact-intensive case you've studied all the evidence, read all the depositions in their entirety, read all the affidavits in their entirety, know all the facts? Yes, Your Honor. Can you reassure me of that? Yes. Very well. Thank you. Please proceed. The Board's decision should be affirmed. Mr. Hovanec's rights are limited by the terms of the lease, which state that the lease may be renewed at the option of the Postal Service. Can a contract never be overridden by bad faith, overridden by bad faith, or bad administration of the contract? No, Your Honor. The bad faith argument that Mr. Hovanec is proposing requires that the Postal Service have a specific intent to injure him. And there's substantial evidence in the record that although there were mistakes made and sloppy administration, there was no intent to injure Mr. Hovanec or to prevent him or to harm him in any way. Do you know who was at the initial discussions that led to the selection of the lease term as 10 years rather than his initial preference of 15 or 20? The initial discussions, I believe, Your Honor, were between Mr. Hovanec, the postmaster, Ms. Maslin, and the real estate specialist. In terms of who signed the agreement to lease, I'd have to double-check, but I believe that would be another postal employee. The reason I'm concerned about that is whether the Board had all the facts before it that would allow it to make a conclusion about intent to harm. For example, hypothetically, if Mr. Hovanec had been told by the contracting officer in the negotiations just before the lease was executed that if there was a rental problem, there would be negotiations initiated by the Postal Service, and then thereafter the Postal Service  that might raise a question, at least, about whether that would support an inference of intent to harm. Well, Your Honor, the bad faith standard, the intent to harm, must be shown by clear and convincing evidence. Well, I understand what the standard of proof is, but my question to you is not what the standard of proof is or what actually happened. My question is whether the Board had before it all the facts and evidence that would allow it to make a sound conclusion about the possibility that postal officials were, in fact, acting in bad faith intending to harm Mr. Hovanec's monetary interests. Well, Your Honor, there's nothing in the record that suggests that anyone at any time told Mr. Hovanec that he had a right to be informed. Certainly, the postal regulations don't state that he has a right to be informed. It's the Postal Service's practice. I read his affidavit or the excerpts I have as suggesting, according to his recollection of the discussions, that the exercise of the option of the renewal period was practically guaranteed. Now, obviously, I don't know what actually happened. I wasn't there. I'm not a fact finder. But that seemed to be his version of the conversation. Now, if we don't have testimony from the postal official who was the other half of that conversation, how could we, or before us, the Contract Board, make a sound decision about the possibility of bad faith action intent to harm? Well, the Board makes its decisions based on the evidence that's presented by Mr. Hovanec and by the Postal Service. And to the extent that there's a lack of evidence, I think that shows that there was no evidence of that for the... There was a Mr. Bland, apparently, involved in these early discussions? Was Mr. Bland presented by deposition or affidavit or otherwise? I don't believe he was, Your Honor. So your best defense would be, Well, that's Mr. Kotko's burden, not mine. Well, one, yes, and then two, that there was a finding. Or to put it differently, your predecessor in this case may have made a litigation gamble that Mr. Hovanec's testimony about that conversation would be disbelieved by the Board and that, therefore, the Postal Service didn't need to bring in its official, I think, Bland, to say, No, no, no, I never said that. He doesn't remember it correctly. So the Postal Service can say that it was up to Mr. Kotko to bring in Postal Official Bland. But it looks to me like it really would have been a rebuttal witness to the affidavit of Hovanec and, therefore, it would be the Postal Service's defensive witness, which they chose not to call. Well, Your Honor, I can't address the reasons why Mr. Bland was not called. The Board did find that there was no specific intent to injure and the conversations that Mr. Hovanec had had with the Postal Officials in the terms of negotiating this lease Who owned the land on which the modular post office was placed across the street from Hovanec's building? It was Ms. Maslin, the Postmaster. She's the Postmaster of the town. Yes, Your Honor. And who owned the land on which Mr. Hovanec built the building? It was also Ms. Maslin. So he purchased her land to build the building he built and then the Postal Service turned around and leased another plot of land owned by the same Postmaster so she benefited twice. Yes, Your Honor. But again... Doesn't that strike you as self-dealing that's a little bit questionable for one of the Postal Officials involved here to be the owner of two plots of land which are successively purchased  and leased? Isn't that a little shady looking? Well, my understanding, Your Honor, since this is a small town and this was a fairly important person... I have no response at all to whether it's self-dealing. If Ms. Maslin's proper role in this drama is to be landowner then she should be the landowner. She shouldn't be able to be the Postal Official making recommendations on the one hand and then on the other hand be the landowner benefiting from the very same recommendations. Well, Your Honor, the Board specifically rejected the argument that that self-dealing played a part in this action and whether Mr. Hovannik was a victim so to speak of bad faith actions by the Postal Service. It truly is. I read the Board decision several times. I quite agree with you that that's what the Board found. But the question we have to answer is were those findings all supported by at least what would the evidence be if we don't have bland version of the conversation we don't have some innocent explanation of the apparent self-dealing by Ms. Maslin the Postmaster then where is the substantial evidence that would justify the Board to reject any notion of bad faith? Well, the the substantial evidence is that the repeated assertions by the Postal Service officials who were involved in this that the reason that they did not renew the lease was economic and that the decision I believe that the decision to use the second property was made only after they determined that the exercising the options on the Havannik lease were not in the best interests of the Postal Service because of the market rent issue. So the decision not to exercise the lease was made purely as an economic reason. What was the total cost of opening the town's third post office the one across the street on Ms. Maslin's leased land? I don't have that figure in front of me Your Honor but I do know that If you don't have that figure in front of you does that mean the Board didn't either? No, it is in the record Your Honor I don't have it in front of me I can be happy to put it in. We know what the cost of renting Havannik's building for the next five years would have been I think $17,000 if memory serves correctly and we know the lease cost of Ms. Maslin's land across the street from Havannik's building that was something like $23,000 so the gap of about $14,000 but I couldn't find anywhere that we know the cost of the modular post office that I guess was plunked down on that plot of land if that exceeded $14,000 then it's not clear to me that it was cheaper for the taxpayers all of us in this room to go the route of across the street rather than renewal even at the presently stipulated rental rate of the Havannik building On page 7 of the board's decision the board makes a factual finding that the long term cost of acquiring this third property and using it would be substantially cheaper than continuing They do indeed but once again what is the evidentiary basis of that how can we satisfy ourselves that the evidentiary basis is substantial when so far no one has been able to identify what the evidentiary basis even is Ms. Hogan was this a  faith and fair dealing is mentioned although I don't believe it's a cause of action to speak of There wasn't the heart of the opponent's argument No It was sought by the administration Correct and the What Alvanek is trying to do here is to use that contractual element to expand its contractual obligations beyond those that are in the express contract The contract only says we will exercise the option at our discretion Any regulations that the Postal Service was required to perform in its administration of managing real estate was for the benefit of the Postal Service and making sure their regulations are not here for his benefit When the handbook says some of its provisions are mandatory what do you take that to mean I take that to mean that the Postal Service requires its employees to follow those directions for example documentation But you would say still only for the benefit of the Postal Service and not conferring any rights on private porting Correct Your With respect to the provisions that we're dealing with here which are found on page 368 of the appendix With respect to the provisions that deal with the exercise of renewal options those did not create any contractual or  for Mr. Hobanek Was it a surprise to you this morning to hear Mr. Kopko's primary reliance being on a decision of this court that he didn't cite in the blue brief but you suggested Mr. Hobanek had to do to him by citing it on page 10 of your response brief Yes Your Honor I forgot for a moment which case that was and I had to remember that was that a showing of bad faith must be proved by clear evidence So you would say I guess well he doesn't really want to extend it he wants to totally change it and take out the bad faith element or what I'm not sure what the the evidence is that Mr. Hobanek had to do to him by citing it on page 10 of your response brief Yes Your Honor Thank you Your Honor Regarding this self dealing with the argument you are raising at the time I did mention that I mention about Maslin in my brief but I attempt to extend upon it now because your honor specifically asked about Maslin and the board made a specific finding about that and the finding was that she knew about it in 1998 and concealed it from Mr. Hovannik's conversations with Bland and I respectfully invite the court's attention to the appendix at page 500 which internally is page 2 of Mr. Hovannik's affidavit in paragraphs 8, 9, and 10. He specifically said he didn't remember the conversations with Hovannik. That's why it's not in the record. In other words, there was no Bland argument made. In your brief you argue forcefully that the district chief in Albany should be directed – I think you even used that word – that at least be renewed. Of course, in many parts of your argument you relied on what the manual dictates. But as I read the manual, it dictates that the decision on renewal is not made by the district manager, in this case  district chief. So the predicate act was in September of 1997. Albany sent a message to Mr. Wood. I've read the message, but you characterized the message as being a decision, a directive, an order to renew in the first option period. But as I read the handbook, it looks like such a document is not a decision, it's a request that an analysis be done by the real estate people, and then depending on pricing, etc., the real estate people either recommend to the real estate    should do that. So I don't think it can be an either or, something like either it's this notice or it's the postal service guidelines. I think that in any organization you have to read it in its totalities. What the message in September 1997 said is exercise the option. It didn't say exercise the option after you've done something else. It said exercise the option. And when Mr. Harold Wood gets that, the first thing under the guidelines that he's supposed to do is the market survey, and he was arguing that the communication from the Albany chief may not be binding or controlling, but it's highly relevant. Is that a fair calculation? If it's not controlling, it is highly relevant, and it's the initial step that starts this cascade of not errors, because errors suggest there may be some unintentional conduct there. I think that there are so many errors in this case that the only reasonable inference that you can make from all of them is that they just weren't going to do this under any circumstances. They weren't going to exercise this under any circumstances, and everything they could possibly do to avoid it was done. All right. I think we have your argument squarely in mind. We thank you.           Thank you very much. I appreciate your time. We'll take the case under advice. We'll take the case under advice. Thank you.   case under advice.